MULLEN LUMBER CO., INC. *vs.* ANDREW LORE.

Norfolk.   January 3, 1989. — April 26, 1989.

Present: WILKINS, LIACOS, ABRAMS, NOLAN, & LYNCH, JJ.

*Mechanic's Lien.*

Where a supplier of materials for construction of a house filed its statement
of account in the appropriate registry of deeds before the completion
date stated in its notice of contract, the statement of account was sufficient
under G. L. c. 254, § 8, to preserve a mechanic's lien on the property.
[753-756]

A mechanic's lien securing payment for building materials expired sixty
days after the supplier filed its statement of account pursuant to G. L.
c. 254, § 8; a second statement of account covering the same materials,
although filed prior to the completion date stated in the notice of contract,
did not revive the lien after the sixty-day statutory period had passed.
[756-757] ABRAMS, J., dissenting.

CIVIL ACTION commenced in the Superior Court Department
on February 18, 1987.

The case was heard by *Charles M. Grabau,* J., on a motion
for summary judgment.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.

*Louis J. Caccavaro, Jr.,* for the defendant.

*Marshall F. Newman* for the plaintiff.

NOLAN, J. This appeal presents issues regarding the interpre-
tation of G. L. c. 254, §§ 4, 8, & 11 (1986 ed.), statutes
governing mechanic's liens.

1. *Facts.* The plaintiff, Mullen Lumber Co., Inc. (Mullen),
entered into a contract dated July 2, 1986, to supply building
materials to one of the original defendants, Nordberg-Kelley
Corporation [1] (Nordberg), to be used in constructing a house in

---

[1] Nordberg-Kelley Corporation originally was a party to this action in the
trial court. The trial judge, however, pursuant to Mass. R. Civ. P. 54 (b),

Norwood for the other defendant, Andrew Lore (Lore). On August 29, 1986, Mullen filed notice of this contract in the registry of deeds to record a mechanic's lien on the house as provided by G. L. c. 254, § 4. Lore received a copy of this notice. The contract completion date for the construction of Lore's house, specified in the notice was February 25, 1987, the same completion date specified in the materials contract between Mullen and Nordberg. On December 5, 1986, Mullen recorded a statement of account, specifying both the amount due on the contract, $19,466.12, and the supplies provided as required by G. L. c. 254, § 8, in order to preserve the mechanic's lien on the property. Mullen took no further action regarding this statement of account.

On or about February 18, 1987, one week before the specified contract completion date, Mullen recorded a second statement in the same amount and for the same supplies detailed in the earlier recorded statement. Mullen also filed its complaint on February 18, 1987, asserting the existence of the lien and seeking its enforcement by sale of Lore's house.

The parties filed cross motions for summary judgment. The trial judge granted Mullen's motion, determining that Mullen had an enforceable mechanic's lien against Lore's property. Lore then appealed to the Appeals Court, challenging both the denial of his motion for summary judgment and the allowance of Mullen's motion. The Appeals Court reversed and ordered that judgment be entered dismissing the action as to Lore. 26 Mass. App. Ct. 364 (1988).

We granted Mullen's application for further appellate review to consider (1) whether a statement of account filed prior to the stated contract completion date will preserve a lien created under G. L. c. 254, § 4 (an issue the Appeals Court did not reach) and (2) if it does, whether, if a person files a statement of account prior to the contract completion date but fails to commence an enforcement action within sixty days, that person may file a second statement of account so as to trigger a new sixty-

365 Mass. 820 (1974), entered a separate judgment against Lore, as Nordberg had filed for liquidation in bankruptcy under c. 7 of the Bankruptcy Code. Nordberg-Kelley is not a party to this appeal.

day period within which to commence an action (an issue that the Appeals Court decided against Mullen).[2]

2. *Statutory framework.* The mechanic's lien statute comprises a comprehensive scheme which compels strict compliance in order to obtain relief. *Savoie Quarry & Constr. Co.* v. *Ziman,* 234 Mass. 210, 214 (1919). Individual sections of the statute establish the time limitations and other requirements necessary to preserve and to enforce the lien. G. L. c. 254, §§ 4, 8, 11. General Laws c. 254, § 4, requires the filing of a notice of contract, § 8 requires the filing of a statement of account, and § 11 requires commencement of an action to enforce.[3] Although not every procedural mistake is fatal, *Val-*

---

[2] Lore also argues that no written contract existed between the parties for the purposes of establishing a lien under G. L. c. 254, § 4. This argument was not presented in the trial court and, indeed, as implicitly conceded by Lore in his motion for summary judgment, there was no dispute as to the existence of a written contract. Accordingly, the argument has not been properly preserved for our consideration and no circumstances exist which prompt us to review a question not passed upon by the court below. See *Albert* v. *Municipal Court of the City of Boston,* 388 Mass. 491, 494 (1983).

[3] General Laws c. 254, § 4 (1986 ed.), states in pertinent part:

"Whoever, subsequent to the date of the original contract, furnishes labor or material, or both labor and material, or performs labor, under a written contract with a contractor, or with a sub-contractor of such contractor, may file in the registry of deeds for the county or district where such land lies a notice of his contract substantially in the following form:

"Notice is hereby given that by virtue of a written contract dated _____, between _____, contractor (or sub-contractor), and _____ said _____ is to furnish or has furnished labor or material, or both labor and material, or perform labor in the erection, alteration, repair or removal of a building or structure by _____, contractor, for _____, owner, on lot of land described as follows:

"Said contract is to be completed on or before _____.

"A notice of any extension of such contract, stating the date to which it is extended, shall also be filed or recorded in said registry prior to the date stated in the notice of the contract for the completion thereof.

"Upon filing a notice, as hereinbefore provided, and giving actual notice to the owner of such filing, the sub-contractor shall have a lien to secure the payment of all labor and material, which he is to furnish or has furnished upon the building or structure, and upon the interest of the owner, as appears of record at the time of such filing, in the lot of land on which said building or structure is situated. But such lien shall in no event exceed the amount due or to become due under the original contract when notice of the filing

*entine Lumber & Supply Co.* v. *Thibeault,* 336 Mass. 411, 413 (1957), failure to comply normally results in dissolution of the lien, see *Blount Bros.* v. *Lafayette Place Assocs.,* 399 Mass. 632 (1987), or in failure of the lien to attach, *Street Lumber Co.* v. *Sullivan,* 201 Mass. 484 (1909).

3. *Filing before contract completion date.* We turn now to the issue left undecided by the Appeals Court, namely, whether a statement of account, filed before the contract completion date, constitutes a legal nullity. We consider this issue, although doing so is no more necessary to our decision than it was to the Appeals Court's decision, because the issue is an important one to people interested in the operation of the statutes governing mechanics' liens and should not be left unresolved. The parties rely on cases from other jurisdictions to support their positions, yet we need not look beyond our own case law and the statute's legislative history to resolve this controversy.

---

of the sub-contract is given by the sub-contractor to the owner; and the time for the performance of the contract of the sub-contractor shall not be extended beyond the time for the performance of the original contract and any extension thereof, if the objection thereto of the owner is filed in the registry of deeds and actual notice of such objection is given by the owner to the sub-contractor within five days after the owner received notice of the filing of the contract as provided in this section."

General Laws c. 254, § 8 (1986 ed.), provides in pertinent part that: "A lien under section four shall be dissolved unless the sub-contractor, or some person claiming by, through or under him, shall, within thirty days after the date on which the contract of said sub-contractor is to be performed, file in the registry of deeds in the county or district where the land lies a statement, signed and sworn to by him, or by some person in his behalf, giving a just and true account of the amount due him, with all just credits, a brief description of the property, and the names of the owners as set forth in the contract."

General Laws c. 254, § 11, reads in its entirety: "The lien shall be dissolved unless a civil action to enforce it is commenced within sixty days after the filing of the statement required by section eight. The validity of the lien shall not be affected by an inaccuracy in the description of the property to which it attaches, if the description is sufficient to identify the property, or by an inaccuracy in stating the amount due for labor or material unless it is shown that the person filing the statement has wilfully and knowingly claimed more than is due him."

Lore first asserts that the provisions of § 11 cause a lien created under § 4 to dissolve "unless a civil action to enforce it is commenced within sixty days after the filing of the statement required by section eight." G. L. c. 254, § 11 (1986 ed.). Lore next contends that the only statement of account acceptable under § 8 is a filing made within the thirty days after the contract completion date specified in the notice of contract filed under § 4. From this, Lore argues that the completion date in the notice of contract is the exclusive date from which the statute of limitations may commence to run and that the earlier filings have no legal effect. We disagree.

The question is whether the filing of a statement of account before the date on which the contract of the subcontractor is to be performed meets the statutory requirement that the statement be filed "within thirty days after the date on which the contract . . . is to be performed."[4] The following discussion demonstrates that the Legislature's intention is satisfied by a filing made before the date that the contract is to be performed.

In 1914, the Legislature appointed a special commission to consider and recommend changes in the laws concerning mechanic's liens. Res. 1914, c. 121. See *Blount Bros.* v. *Lafayette Place Assocs., supra* at 636. It is obvious from the special commission's report that no effective system existed at the time for notifying purchasers or mortgagors of the existence of a lien and for determining when such a lien would end. Extract from the Report of the Special Commission Appointed to Consider and Recommend Changes in the Laws Relative to Liens, Mortgages, and Tax Titles, 1 Mass. L.Q. 344, 348-349 (No. 4, 1916). The special commission thus urged the Legislature to require the filing of a notice of contract, including the completion date, to aid in providing third parties with notice of encumbrances existing on the property and when such encumbrances would dissolve. *Id. Pratt & Forest Co.* v. *Strand Realty Co. of Lowell*, 233 Mass. 314, 317-318 (1919).

---

[4] The dissent fails to address the difference in the language between § 4 and that of § 8. The language of § 4 refers to the date the contract "is to be completed" whereas the language of § 8 refers to "the date on which the contract . . . is to be performed." G. L. c. 254, §§ 4, 8.

The special commission also suggested that subcontractors should be required to abide by and be afforded the protection of these laws. Extract from the Report of the Special Commission, *supra* at 349.

In 1915, the mechanic's lien statute underwent substantial revision and the Legislature adopted many of the special commission's recommendations. See *Blount Bros.*, *supra*. In 1918, the predecessor to § 8 was further amended to include the language at issue here, that the lien "shall be dissolved unless the sub-contractor . . . [files a statement of account] within thirty days after the date on which the contract of said sub-contractor is to be performed." St. 1918, c. 265, § 3. The question presented here is what effect, if any, should be given to a statement filed before the specified contract termination date. It is clear that, before the amendments, a contractor could file the statement once all labor and materials had been furnished and did not have to wait until the contract completion date had passed. *General Fire Extinguisher Co.* v. *Chaplin*, 183 Mass. 375, 376 (1903).

The interpretation advanced by Lore and discussed by the dissent protects no legitimate interests of the owner and would effectively penalize subcontractors who complete performance early by preventing them from taking immediate action to enforce their liens. Cf. *Hammill-McCormick Assocs.* v. *New England Tel. & Tel. Co.*, 399 Mass. 541, 545-546 (1987) (interpreting G. L. c. 254, § 4, to permit subcontractor to file notice of contract after performance completed, but prior to completion date specified in contract). The contract completion date is not the "linchpin of the statutory framework." *Post* at 762. Rather, it appears that the statute establishes the latest time at which a lien could be enforced and does not preclude earlier enforcement.[5] Indeed, an interpretation permitting early filing of the statement of account promotes the purposes of the

---

[5] Cases from other jurisdictions cited in the dissent are governed by statutes dissimilar to our statutes. These cases speak of filing a "notice of lien," or a "notice of intention to claim a lien." See *post* at 760. The Massachusetts statutes recognize only the filing of a notice of contract and a statement of account. Our law provides for the creation of a single lien.

statutory scheme by putting third parties on notice at an earlier time as to the amount of the lien.[6] It also apprises them that the encumbrance will dissolve unless an action to enforce is brought within sixty days after the filing of the statement. See G. L. c. 254, § 11. Accordingly, we see no reason to prohibit the filing of a statement of account before the specified contract completion date when the subcontractor has finished providing the supplies or labor before the specified contract completion date. See *Massachusetts Gas & Elec. Light Supply Co.* v. *Rugo Constr. Co.*, 321 Mass. 20, 23 (1947) (interpreting § 8 to require subcontractors to file sworn statement áfter completion of work or after last materials supplied).

4. *Filing of a second statement of account.* We must next consider the effect of filing à second statement of account for the same supplies before the contract completion date. We conclude that the filing of the second statement of account had no legal effect. Mullen's first statement was filed on December 5, 1986. The statutory period for enforcing the lien expired on February 3, 1987. G. L. c. 254, § 11. If we were to reach a contrary result, as suggested by the dissent, we would afford the subcontractor a period greater than sixty days in which to commence an enforcement action, a result we believe unintended by the Legislature. Although, as we concluded above, the filing of a statement of account before the contract completion date does not, standing alone, defeat Mullen's claim for relief, Mullen's failure to commence an action within the statutory time period reckoned from the first filing proved fatal and, by the terms of the statute, caused the lien to dissolve. *Id.* There can be but one lien for the materials supplied and the filing of a second statement of account concerning the same materials neither extends the statutory period nor revives the

---

[6] The dissent maintains that, as a result of our decision today, interested third parties and property owners will suffer because "subcontractors will be careful not to file early statements of account." *Post* at 761. Quite to the contrary, a subcontractor whose performance is complete will be encouraged to file early and enforce its claim instead of waiting until the contract performance date has passed.

lien if the statutory period has passed. See *Hilliard* v. *Allen*, 4 Cush. 532, 535-536 (1849).

5. *Conclusion.* The judgment entered against the defendant Lore is reversed and a new judgment is to be entered dismissing the action as to him.

*So ordered.*

ABRAMS, J. (dissenting). I would affirm the Superior Court's judgment in favor of Mullen. General Laws c. 254, § 4 (1986 ed.), provides that, if a subcontractor furnishing labor or materials for a building wishes to have a lien on the property, the subcontractor should file in the registry of deeds a notice of contract. This notice sets forth a projected completion date for the contract. The subcontractor must also provide a copy of the notice of contract to the owner of the land. *Warren Bros.* v. *Peerless Ins. Co.*, 8 Mass. App. Ct. 719, 723 (1979).

The notice of contract itself creates the mechanic's lien. G. L. c. 254, § 4. The lien can continue to exist, however, only if the subcontractor "shall, *within thirty days after* the date on *which the contract of said sub-contractor is to be performed*, file . . . a statement [of account]" (emphasis supplied). G. L. c. 254, § 8 (1986 ed.). The statement of account records the amount of money owed to the subcontractor. An action to enforce the lien must be brought "within sixty days after the filing of the statement *required by section 8*" (emphasis supplied). G. L. c. 254, § 11. Nothing in § 8 prohibits the filing of more than one statement of account. As I read the statutory framework, the only statement *required* by § 8 is the last one filed by thirty days after the completion date specified in the notice of contract filed under § 4.

In my view, the controlling provision is the completion date specified in the notice of contract. See G. L. c. 254, § 4. The statute makes the completion date the critical date. "This results inevitably from the absolute requirement for the statement of such date in the notice, from the fact that *that date is the point of time from which run the several statutory limitations of the*

*act* . . . . One plain object of the present statute was to require the placing on record in the registry of deeds of certain information, for the benefit of prospective purchasers of land and other interested persons, touching the incumbrances created . . . by liens, including the time limit within which the furnishing of material and labor under written contracts must be performed." *Adams & Powers Co.* v. *Seder*, 257 Mass. 453, 454-455 (1926), quoting *Pratt & Forrest Co.* v. *Strand Realty Co.*, 233 Mass. 314, 317 (1919). See *Blount Bros.* v. *Mondev Mass., Inc.*, 22 Mass. App. Ct. 96, 100 (1986), *S.C.*, 399 Mass. 632 (1987). The court's construction, by contrast, frustrates the legislative intent of establishing the date set for completion as the preeminent date for figuring the various time limitations set by the statute. The court's construction makes the final date for bringing a foreclosure action depend on the date the subcontractor happens to file an early statement of account.

In *Hilliard* v. *Allen*, 4 Cush. 532, 535-536 (1849), on which the court relies, we did not consider the filing of a second statement of account. In that case, we applied a "statute [which] provide[d], in express terms, . . . that the lien shall be dissolved . . . unless a suit for enforcing the lien shall have been commenced within the six months" of establishment of the lien. Because the statute of limitations had run, we simply found that the statute required the conclusion that the lien had been dissolved. *Id.* The court does not consider the fact that the current mechanic's lien statutes contain no similar language mandating dissolution of the lien sixty days after the filing of the first statement of account. See G. L. c. 254, § 11.

According to my reading of the terms of the statute, a subcontractor may continue to file numerous statements of account until thirty days after the date set for completion. The sixty-day period during which the subcontractor must bring an action to enforce the lien starts running from the last timely filing of a statement of account. Under this construction, any third party interested in the property would always investigate possible liens in the following manner. Thirty days after the date set for completion, the third party would look up the property in

the registry of deeds. He would note the last statement of account filed by the subcontractor, and count sixty days from that statement of account. The third party would know that after those sixty days, the subcontractor could not bring an action to enforce.

The court's construction assumes that the statute is to be strictly construed in favor of homeowners and interested third parties and is designed for their protection. I disagree. "The Mechanic's Lien Act is in derogation of common law and therefore to be strictly construed as to its provisions giving rise to the lien, but the provisions relating to the enforcement of the lien are liberally construed to effect the statutory remedy subjecting the land and building of the benefited and noticed owner to a lien for work performed and materials furnished." *Sikkema* v. *Packard*, 79 N.J. Super. 599, 602 (1963). Because the statute makes the completion date the critical date, see *Adams & Powers Co.* v. *Seder*, *supra*, and Mullen brought its action within sixty days of its last filing of a statement of account, and before the date set for completion, I think Mullen complied with the statutes.

The construction announced by the court today forces subcontractors who finish the work early to choose between two unappealing courses of action. The subcontractor must either delay filing statements of account until a late date, thus providing no early public notice to interested third parties about the money owed on the property; or, if the subcontractor files an early statement of account, the subcontractor must not give the debtor a chance to pay the debt, but must within sixty days bring an enforcement action or lose its rights.

The first choice — delaying until a late date to file a statement of account — is unfortunate, for until now the permissible practice of filing multiple statements of account provided greater notice to interested third parties. For example, when a contract became due in parts, the subcontractor could file a statement of account when the first part was due. See *Lock Joint Pipe Co.* v. *Commonwealth*, 331 Mass. 346 (1954). The court's construction severely discourages this salutary practice.

The second option available to a subcontractor — filing an early statement of account and then being forced to bring an action to enforce the lien within sixty days — is also unfortunate. Public policy is not served by forcing the subcontractor to foreclose on its lien rather than being allowed to negotiate flexibly with the debtor for payment.

A majority of jurisdictions that have considered the issue reject the court's construction and allow subcontractors to bring actions to enforce liens based on the last filing of statements of account, rather than on the first, a result consistent with our statutory requirements. *Sikkema* v. *Packard, supra* at 602-603 ("[T]he cases on this point in other jurisdictions . . . all indicate [that] an action may be maintained on a second lien although a former related lien has been filed and abandoned, or expired, provided the second lien conforms with the statutory requirements"). *Berger Mfg. Co.* v. *City of New York*, 206 N.Y. 24, 32-33 (1912). *In re Cohen*, 209 A.D. 413 (N.Y. App. Div. 1924). *T.A. Maloney Contracting Corp.* v. *Blume*, 85 Misc. 2d 838 (N.Y. Sup. Ct. 1976). *Graybar Elec. Co.* v. *Providence Journal Co.*, 92 R.I. 120, 123 (1961). *West* v. *Jarvi*, 44 Wash. 2d 241, 251 (1954). This rule is followed even when the last statement of account is identical to the first. See *Sikkema* v. *Packard, supra* at 603; *Graybar Elec. Co.* v. *Providence Journal Co., supra.* See also *Berger Mfg. Co.* v. *City of New York, supra* at 33.[1] The only case cited by the parties which supports the court's construction is an 1862 case from Missouri. *Mulloy* v. *Lawrence*, 31 Mo. 583 (1862).[2]

---

[1] The court suggests that these cases are inapposite because the statutes in those States are different from the statutes in Massachusetts. See *ante* at 755 n.5. Although the statutes may differ in terms of the time the lien is created, the test is not the time the lien is created but the date from which time for enforcement begins to run. Our statute clearly states that the statement of account must be filed within thirty days of the completion date and enforcement proceedings must commence within sixty days thereafter. The fact that prior statements have been filed does not alter the statutory time for commencing enforcement proceedings. The point which the court misses is that every court construing this type of statute recognizes that the legislative intent was that it be construed in favor of protecting subcontractors. *Sikkema* v. *Packard*, 79 N.J. Super. 599, 602 (1963).

[2] Two Washington courts, interpreting specific statutory language, have recently modified the rule allowing actions to enforce the lien to be brought

Subcontractors, reasonably relying on the construction from other jurisdictions, may have formulated the practice of routinely filing more than one statement of account in Massachusetts. The court's construction, conflicting as it does with the rule in surrounding States, precludes a uniform practice which may be followed by the subcontractors who do work in a number of other States. See *Sikkema* v. *Packard, supra*; *Berger Mfg. Co.* v. *City of New York, supra. Graybar Elec. Co.* v. *Providence Journal Co., supra.*[3]

No reasonable policy consideration supports the court's construction of the statutes. Because of the procedural rule announced by the court today, Lore prevails, and there will be no lien to secure payment of the money he owes Mullen, his subcontractor. In the future, however, those to suffer from this construction will be not only the subcontractor but the interested third parties and the property owners whom the court attempts to protect. Interested third parties in Massachusetts may no longer have early notice of money owed under a mechanic's lien, for subcontractors will be careful not to file early statements of account. Owners of property may suffer by having the liens foreclosed by subcontractors who do file early statements of account when otherwise the owners would have been

---

on a later filing of a statement of account. Those courts announced a position between my position and that of the court: actions may be brought on a second statement of account only if the second statement was filed before the statute of limitations for bringing an action on the first statement of account had run. *Airefco, Inc.* v. *Yelm Community Schools No. 2*, 52 Wash. App. 230, 234 (1988). *Shope Enters.* v. *Kent School Dist.*, 41 Wash. App. 128, 133 (1985). Those cases dealt with the specific statutory language pertaining only to liens on the reserve fund created in connection with public works. See *Airefco, Inc.* v. *Yelm Community Schools, No. 2, supra* at 233; Wash. Rev. Code § 60.28.030 (1961 & 1988 Supp.) ("If a claimant fails to bring action to foreclose his lien within the four months period, the reserve funds shall be discharged from the lien"). Cf. *West* v. *Jarvi*, 44 Wash. 2d 241 (1954) (discussing Wash. Rev. Code § 60.04.020, which deals with a mechanic's lien on private building).

[3] I note that the record and representations of counsel on further appellate review suggest that industry practice in Massachusetts currently approves of subcontractors' filing numerous statements of account prior to bringing an enforcement action.

allowed more time and leeway to negotiate the debt. Because the date set for completion is the linchpin of the statutory framework, I would affirm the Superior Court judgment.